EXECUTORS AND ADMINISTRATORS.

FRANCES MOORE *vs.* GERMAIN T. DORTIC and JOHN J CLAYTON, Ex'rs. of EUGENE D. COOK, dec'd.

*Bill for Discovery, Injunction and Relief.*

In paying the debts of a decedent, mortgages have a general lien on the estate, on the same footing with judgments, in the order of priority of date.

This bill states, that Eugene D. Cook, the testator, in his life time, made and executed a note, and mortgage to secure the note, to complainant; that after the note became due, the testator made two payments, leaving a large balance due, on said mortgage and note; that testator's estate is largely insolvent, and that debts of superior degree will only be paid; that the executors are about to pay debts, of inferior degree *to the mortgage debt;* and that the executors will not be enabled to respond, out of their individual property, the amount which they may pay, out of the legal order; and the bill prays an Injunction, which was granted.

The defendants filed a general demurrer, for the want of Equity; and, in the argument, insist that a mortgage debt is not one of superior degree, but must be considered as of no higher degree, than the note, which it is intended to secure; that our Statute of 1792 places bonds before notes of hand, and that notes of hand are not named in said Act, which directs executors and administrators, in what order they are to pay the debts due by decedents; and that if notes of hand are to have a place in the Statute, they must be placed just before open accounts; and that, therefore, complainant is not entitled to the preference claimed, under the mortgage, made to secure the payment of the note. That the Legislature could not have intended, because a creditor happened to take a mortgage, on a part of the debtor's property, that, so soon as the debtor departed this life, the mortgage was to operate as general *lien* on the whole *estate.* And in support of these grounds, the defendants referred to an Act of the State of South Carolina on the same subject,

[Moore *vs.* Dortic & al.]

and which shews, by comparing them, that our Act is a copy of the South Carolina Act, and that the Courts of that State have given to their Act the construction, contended for by defendants ; and that the words, " *other obligations,*" in our Act of 1792, do not include notes of hand, but must mean other sealed instruments ; and the defendants' counsel referred the Court to the following authorities :— *Gremsly on Ex.* 241 ; *Powell, on Mort.* 775, (note) ; 1 *Ves. Sr.* 313 ; *Williams on Ex.* 671 ; 2 *McCord R.* 188.

And on the part of the complainant, it is contended, that the order, in which debts shall be paid, upon the death of a party, is a question of discretion in the Legislature, and therefore entirely arbitrary. That the Statute of 1792, declaring the order of paying debts, is, so far as the complainant's claim is concerned, clear and explicit, and that by every rule, laid down by the Courts for the construction of Statutes, the words, when plain and explicit, cannot be altered by mere construction, so as to hold, that the Legislature did *not* mean what they *have said,* but have meant something, which they did not *say.* And to prove that this rule of paying off debts is arbitrary, and has been altered from the common law rule, and that Courts of Chancery lay down rules by which they will be governed in their Court, the Court is referred to the following cases :—2 *Chitty's Bl.* 340, 365 ; 2 *Ch. R.* 54, 142 ; and the Act of 1764, *Prince D.* 223, *Sec.* 8. Wherever a creditor is an administrator, he must pay debts according to their dignity, and cannot retain out of their order.

The Court, in examining the authorities referred to, admits that the case, cited from McCord's Reports, is one in point, and would control this question, if this Court adopts the rule, as applied in that case. But as this Court feels itself bound, in the construction of all Law, to pursue the rule laid down by the most eminent Judges, from Sir William Blackstone, down to the present day, it cannot concur with the rule laid down by the Judges *in that case.* What are these rules ? 1st. Words are to be taken in their most common and known signification— if they be doubtful, then the context. Next, the subject matter. And, lastly, the reason and spirit of the Law, and which is called an equitable one. These are the rules, as stated by Mr. Blackstone. Now let us see whether these rules have been followed by other, and what Judges.

K

[Moore vs. Dortic & al.]

"If words go beyond the intention, it rests with the Legislature to make an alteration." "Our decision," said Lord Tenterden in a recent judgment, "may, perhaps, in this particular case, operate to defeat the object of the Statute; but it is better to abide by this consequence, than to put upon it a construction, not warranted by the Act, in order to give effect to what *we* may *suppose* to be the intention of the Legislature."—(R. *vs.* Braham, 8 *Barn. & Cres.* 104.) In another case, the same distinguished Judge said, "The words may probably go beyond the intention; but if they do, it rests with the Legislature to make the alteration. The duty of the Court, is only to construe and give effect to the provision.—(Notley *vs.* Buck, 8 *Barn. & Cres.* 164.) "It is safer," said Mr. Justice Ashurst, in a judgment on the Game Laws, "to adopt what the Legislature have actually said, than to suppose what they meant to say."—(1 *T. R.* 52.) "I have often lamented," said Lord Tenterden, near the commencement of his judicial career, "that in so many instances, the Courts "have departed from the plain and literal construction of the Statutes, "relating to the settlement of the poor. As far as the authorities " go, I have always held, and shall always hold, myself bound ; but " when they are silent, I hold myself bound to construe these acts of " Parliament, according to the plain and popular meaning of their words."—(R. *vs.* Turvey, 2 *B. & A.* 522.) And see Lord Ellenborough's observations, in R. *vs.* Bray. (3 *M. & S.* 20.) And the same disposition has been shown, and equally salutary doctrines inculcated, with regard to extending Statutes by Equity.—See Brandling & Barrington, 6 *B. & C.* 475. From the foregoing authorities, it is clearly established, that Courts are bound by the words of a Statute, where they are not ambiguous. What are the words of the Statute of 1792, which I am called on to give effect to? They are as follows :—" Debts due by a testator, or intestate, shall be paid by " executors and administrators, in the order following, viz. funeral " and other expenses of the last sickness; charges of probate and " will, or letters of administration; next, debts due to the public; " next, judgments, mortgages, and executions, (the eldest first); " next, rent; then, bonds, or other obligations ; and, lastly, debts due " on open accounts : but no preference whatever shall be given, to " creditors in equal degree, where there is a deficiency in assets, ex- " cept in cases of judgments, mortgages that shall be recorded, from " the time of recording, and executions lodged in the Sheriff's office,

[Moore *vs.* Dortic & al.]

" the eldest of which shall be first paid, or in those cases where a
" creditor may have a lien on any part of the estate."

The case now under consideration, and the demurrer filed, calls on
the Court to say, whether judgments, mortgages, and executions, the
eldest first, shall be paid, after paying off funeral and other expenses
of the last sickness, and charges for administration and debts due the
public ; or whether the Court will construe these words in the Act
to mean notes of hand, which the mortgage was made to secure : and
as notes of hand are not named in the Statute, to interpolate them
into the Statute, just before open accounts, as open accounts are last
to be paid.    From the rules before laid down, by the cases cited, for
the construction of Statutes, this Court does not hold or possess the
right, to say to the Legislature, you have said so, or so, but you did
not mean what you have said.    I construe your words, to mean
quite a different thing.    You have said, mortgages shall be paid, with
judgments and executions, the eldest first ; but I say you meant the
note of hand was to be the rule by which you are to be paid.    Were
I to hold such rules, for construing the plain words of the Legislature,
I think they ought, as speedily as possible, to deprive me of the
power of being the interpreter of their words and meaning, or to
execute their will.

It is therefore the decision of this Court, that, after the payment,
by executors and administrators, of funeral and other expenses of the
last sickness, charges of probate and will, or letters of administra-
tion, and debts due the public, then judgments, mortgages, and
executions, the eldest first.    But, where there is deficiency of assets,
creditors in equal degree, as different mortgagees and judgment cred-
itors, the lien must be determined from the time of its being recorded.
Thus it will be seen, that whilst the Legislature have given to mort-
gagees a general lien on the estate of their deceased mortgagor,
which, before his death, was but a specific lien, they have, on the
other hand, deprived the mortgagees of their specific lien, by post-
poning them to the funeral and other expenses of the last sickness,
charges of probate &c. and next debts due the public : so that if
the whole of a decedent's property were under mortgage, and the
decedent's funeral expenses and last sickness, charge for probate &c.
and debts due the public, were to take the whole estate ; the mort-

[Moore *vs.* Dortic & al.]

gagee would lose his lien and his *debt.* The mortgagee is therefore entitled to recover her debt, in the order prescribed by the Act of 1792.

From the points raised in this case, under this demurrer, the Court is called on to decide, whether notes of hand, and other written promises or agreements, are provided for; and if provided for, where are they to stand, in payment of the assets. And here, the Court finds much more difficulty, in the construction of every part of the Act. If notes of hand be *a casus omissus,* then it can, in no case, be supplied by Courts of Law: Judges are bound to take the Acts of Parliament, as the Legislature have made them.—(1 *T. R.* 52.) If notes and other instruments in writing are provided for, it is under that part of the Statute which says, " then, bonds or other obligations, and lastly, debts due on open account." Now, according to the rule as laid down for the construction of Statutes, words are to be taken in their plain and popular meaning. Now is the Court to consider, that the Legislature did not intend to provide for the payment of notes and other written promises, whilst they have provided for the payment of open accounts? It is the opinion of this Court, that the Legislature did not intend to omit such evidences of debt; but used the words, " bonds and other *obligations,*" in their common or popular sense, and therefore included notes of hand, and other promises in writing, under the words, " *other obligations,*" and placed them on the same footing with bonds. And this is the construction, which this portion of the Law has uniformly received, in the Middle District. This Court, therefore, decides, that bonds, notes, and other written acknowledgments of the decedent, should be placed on the same footing, in payment of the decedent's debts.

The demurrer, for want of Equity, in complainant's bill, is hereby, overruled, and the defendants ordered to answer fully, to complainant's bill.

William W. Holt, Robert Clarke, George Schley, Counsel for Complainant.

Henry H. Cumming, Counsel for Defendants.